## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**Case No.:**

**BTL INDUSTRIES, INC.**,

      Plaintiff,

v.

**DNA DISTRIBUTION LLC,**
**ARTYEM PERLOV,** and
**DARYA VARSHAVSKI**,

      Defendants.

_____/

## COMPLAINT

Plaintiff BTL Industries, Inc. (hereinafter "***BTL***"), for its Complaint against DNA Distribution LLC ("***DNA***"), Artyem Perlov, and Darya Varshavski (collectively, the "***Defendants***"), alleges as follows:

### NATURE OF THIS ACTION

1.    This is a civil action by BTL arising out of Defendants' patent infringement in violation of the patent laws of the United States, 35 U.S.C. § 1 *et seq.*; Defendants' trademark infringement, unfair competition, false designation of origin, and false advertising under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a); Defendants' trademark infringement and unfair competition under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 ("***FDUTPA***"), and the common law of the State of Florida.

2.    BTL and its affiliates pioneered the application of high-intensity, focused electromagnetic technology in non-invasive aesthetic body-contouring devices. In June 2018, BTL launched the ground-breaking EMSCULPT® aesthetic body-contouring device that uses this technology in the United States, after the device was cleared by the U.S. Food and Drug

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2ⁿᵈ Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

Administration (FDA). BTL and its affiliates protected the EMSCULPT® device—and the technology used in the device—with numerous patents and federally registered trademarks and copyrights.

3.     BTL and its affiliates continue to pioneer the application of high-intensity, focused electromagnetic technology in non-invasive aesthetic body-contouring devices. In September 2022, BTL launched the EMFACE® aesthetic facial-contouring device. Like the EMSCULPT® device, BTL protects the EMFACE® device—and the technology used in the device—with numerous patents and federally registered trademarks.

4.     Defendants promote and sell certain non-invasive body contouring devices in the United States. On information and belief, Defendants have and continue to infringe BTL's patents directed to body-contouring methods and devices by importing, offering for sale, or selling these devices. On information and belief, Defendants advertise these devices by improperly using BTL's trademarks, and confusingly similar variations of these trademarks, in their promotional and informational materials for these devices.

5.     Defendants infringing and fraudulent conduct not only irreparably harms BTL and the goodwill associated with its brand but may also pose potentially serious health and safety consequences to the public as, on information and belief, Defendants' devices are not FDA cleared. Defendants' use of the HIFEM® and EMSCULPT® marks and the confusingly similar HIEMS mark misleads consumers into believing that Defendants' devices are associated and/or otherwise affiliated with BTL.

6.     BTL is thus forced to file this action to combat Defendants' unauthorized use of its federally registered trademarks, as well as to protect unknowing consumers from purchasing devices that are not FDA cleared.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

7.      Defendants willful and continuing trademark infringement, unfair competition, and patent infringement should be enjoined permanently to curb the harm to BTL's reputation and the relevant segment of the public at large. BTL has been, and continues to be, irreparably damaged as a result of Defendants' willful actions and seeks injunctive and monetary relief.

## PARTIES

8.      BTL is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 362 Elm Street, Marlborough, Massachusetts 01752.

9.      On information and belief, DNA is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business at 6000 Collins Avenue, Apartment 340, Miami Beach, Florida 33140.

10.      On information and belief, Artyem Perlov is an individual and authorized member of DNA and resides at 6000 Collins Avenue, Apartment 340, Miami Beach, Floria 33140.

11.      On information and belief, Darya Varshavski is an individual and authorized member of DNA and resides at 1800 North Bayshore Drive, Apartment 301, Miami, Florida 33132.

## JURISDICTION AND VENUE

12.      This Court has subject-matter jurisdiction over BTL's claims arising under the patent laws of the United States, 35 U.S.C. § 100, *et seq.* and the Lanham Act, 15 U.S.C. §§ 1051, 1121, pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a)–(b).

13.      This Court has supplemental jurisdiction over BTL's claims arising under the laws of Florida, pursuant to 28 U.S.C. § 1367(a), because BTL's state-law claims are so related to BTL's federal law claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

14.     On information and belief, this Court has personal jurisdiction over DNA because DNA is a limited liability company whose principal place of business is located in this District and DNA has committed in this District acts of patent infringement under 35 U.S.C. § 271(a), (b), and/or (c) and intends a future course of conduct that includes acts of patent infringement. On information and belief, DNA has purposefully directed the offers for sale, sale, importation, and distribution of certain infringing non-invasive body contouring devices, knowing that they will be sold and used in the State of Florida, and has made the products available for sale in the State of Florida. Further, DNA has advertised and promoted these devices using BTL's trademarks, and confusingly similar variations of these trademarks, in the State of Florida. DNA has committed acts of trademark infringement, false, misleading, and deceptive advertising under federal and state law, and intends a future course of such conduct in this District. BTL's causes of action arise out of these activities. These acts have led and will lead to foreseeable harm and injury to BTL in the State of Florida. On information and belief, DNA has derived, and will derive, substantial revenue from the sale of these infringing devices in the State of Florida.

15.     On information and belief, this Court has personal jurisdiction over Defendant Perlov because Mr. Perlov resides in this District. On information and belief, Mr. Perlov purposefully directed the offers for sale, sale, importation, and distribution of certain infringing non-invasive body contouring devices, knowing that they will be sold and used in the State of Florida, and has made the devices available for sale in the State of Florida. These acts have led and will lead to foreseeable harm and injury to BTL in the State of Florida. On information and belief, Mr. Perlov has derived, and will derive, substantial revenue from the sale of these infringing devices in the State of Florida.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

16.     On information and belief, this Court has personal jurisdiction over Defendant Varshavski because Ms. Varshavski resides in this District. On information and belief, Ms. Varshavski purposefully directed the offers for sale, sale, importation, and distribution of certain infringing non-invasive body contouring devices, knowing that they will be sold and used in the State of Florida, and has made the devices available for sale in the State of Florida. These acts have led and will lead to foreseeable harm and injury to BTL in the State of Florida. On information and belief, Ms. Varshavski has derived, and will derive, substantial revenue from the sale of these infringing devices in the State of Florida.

17.     Further, the acts complained of herein occurred in Florida.

18.     Similarly, the exercise of personal jurisdiction over Defendants comports with the due process requirements of the United States Constitution because:

(a)     Defendants have purposefully established "minimum contacts" with the State of Floria and this District; and

(b)     the exercise of personal jurisdiction over Defendants will not offend the traditional notions of fair play and substantial justice.

19.     Therefore, this Court has specific and general jurisdiction over Defendants.

20.     Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400 at least because Defendants are residents of and have their principal place of business in this District and are subject to personal jurisdiction in this District.

## **BACKGROUND**

21.     BTL specializes in the innovation, development, and sale of equipment and treatments for the aesthetics industry in the United States. BTL and its affiliates developed proprietary technology that uses high-intensity electromagnetic stimulation to tone and strengthen muscles in targeted areas. BTL applied its technology to develop a series of new and innovative

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

FDA-cleared devices and developed protocols for using the technology for aesthetic therapies. BTL denotes its products and services that feature this technology with its HIFEM® brand and other trademarks.

22.     The first such device that BTL developed was the EMSCULPT® device, a standalone, non-invasive, FDA-cleared body-contouring device. *See* **Exhibit A** (BTL Press Release). BTL's patent-protected EMSCULPT® device uses high-intensity electromagnetic energy to induce powerful muscle contractions in a patient. BTL has developed specifically configured EMSCULPT® applicators, tailoring each type of applicator to a specific target area.



23.     The EMSCULPT® device uses innovative and patent-protected protocols for aesthetic therapies. BTL's proprietary protocols create repetitive muscle contractions that result in

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

a   non-invasive   method   of   toning   muscle   and   body   sculpting.   *See*
https://bodybybtl.com/solutions/emsculpt-neo/.

24.     In June 2018, BTL received clearance from the FDA for its EMSCULPT® device
with large applicators and began to sell the device in the United States for the improvement of
abdominal tone, strengthening of the abdominal muscles, development of a firmer abdomen, and
for strengthening, toning, and firming of the buttocks and thighs. *See Id.* In October 2018, BTL
received FDA clearance for an additional indication for the improvement of muscle tone and
firmness and for strengthening muscles in arms. *Id.* In July 2019, BTL received FDA clearance for
the EMSCULPT® device with both large and small applicators for the improvement of abdominal
tone, strengthening of the abdominal muscles, development of a firmer abdomen, strengthening,
toning, and firming of the buttocks, thighs, and calves, as well as improvement of muscle tone and
firmness for strengthening muscles in arms. *Id.* The smaller applicators are intended for smaller
treatment areas.

25.     BTL markets and distributes its non-invasive aesthetic body-contouring
EMSCULPT® device to healthcare professionals, and BTL licenses these healthcare professionals
to provide the associated treatment services administered via authentic EMSCULPT® devices that
incorporate its proprietary technology, muscle toning protocols, and applicators in the United
States.

26.     BTL's EMSCULPT® device created a new market in which it quickly became the
innovative industry leader. Before BTL launched the EMSCULPT® device in 2018, no other
product used high-intensity, focused, electromagnetic technology to tone and firm muscle for non-
invasive, aesthetic body contouring.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

27.     The aesthetic industry has recognized BTL's innovation, hailing it has having taken "the aesthetics industry by storm;" praising BTL as being the first to apply high-intensity, focused, electromagnetic energy technology for aesthetics; and lauding the EMSCULPT® device as having "transformed treatment protocols." **Exhibit A**.

28.     In September 2022, BTL released the EMFACE® device (shown below), a standalone, non-invasive, aesthetic facial-contouring device. *See* Exhibit B (BTL EMFACE Press Release). BTL's patent-protected EMFACE® device applies a combination of synchronized radiofrequency and high-intensity facial electromagnetic stimulation (HIFES®). Synchronized radiofrequency heats the dermis to stimulate collagen and elastin production, while HIFES® selectively contracts facial muscles. BTL has developed specifically configured EMFACE® flexible applicators, tailoring each type of applicator to a specific target area.



29.     The EMFACE® device uses innovative and patent-protected protocols for aesthetic therapies. BTL's proprietary protocols create heat and repetitive muscle contractions that result in a non-invasive method of toning muscle and face sculpting. https://bodybybtl.com/solutions/emface/.

30.     In March 2022, BTL received clearance from the FDA for its EMFACE® device and began to sell the device in the United States for the improvement of facial toning and the reduction of wrinkles. *See Id.*

31.     BTL markets and distributes its non-invasive aesthetic facial-contouring EMFACE® device to healthcare professionals, and BTL licenses these healthcare professionals to provide the associated treatment services administered via authentic EMFACE® devices that incorporate its proprietary technology, muscle toning protocols, and flexible applicators in the United States.

32.     BTL's market success and superior performance are by-products of its technological innovations over the past several decades. BTL continues to implement these innovations today. BTL has protected its investment into its innovations and its brand with patents and trademarks. BTL lists the patents that cover its products, including EMSCULPT® and EMFACE®, on its website at www.btlnet.com/patents.

A.     **The Asserted Patents**

33.     On November 19, 2019, the United States Patent and Trademark Office ("*USPTO*") duly and lawfully issued U.S. Patent No. 10,478,634 (the "*'634 Patent*"), entitled "Aesthetic Method of Biological Structure Treatment by Magnetic Field" to BTL Medical Technologies S.R.O. A true and correct copy of the '634 Patent is attached hereto as **Exhibit C**. The '634 Patent was exclusively licensed to BTL, and BTL possesses the exclusive rights to sue and for recovery

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

for any past, present, or future infringements of the '634 Patent, including equitable relief and damages.

34.     On June 20, 2023, the USPTO duly and lawfully issued U.S. Patent No. 11,679,255 (the "**'255 Patent**"), entitled "Device and Method for Unattended Treatment of a Patient." A true and correct copy of the '255 Patent is attached hereto as **Exhibit D**. The '255 Patent was exclusively licensed to BTL, and BTL possesses the exclusive rights to sue and for recovery for any past, present, or future infringements of the '255 Patent, including equitable relief and damages.

**B.     BTL's Trademarks**

35.     BTL uses and licenses registered and unregistered trademarks and trade dress to market its aesthetic equipment and treatments in the United States including the following federally registered marks (the "**BTL Trademarks**"):

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| 5,688,619 | **HIFEM** | Mar. 5, 2019 | Sept. 19, 2017 | Class 10: Medical and aesthetic apparatus and instruments generating electromagnetic, magnetic, electrical, mechanical, radiofrequency or thermal energy for use in skin treatment procedures; medical apparatus and instruments for body toning and body shaping; medical apparatus and instruments for the removal of fat, circumference reduction, tightening of skin, reduction of wrinkles, reduction of scars, reduction of stretch marks, rejuvenation of skin, treatment of pigmentation spots, increase in muscle volume, increase in |

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | number of muscle fibres and increase in muscle tonus; medical apparatus and instruments for the treatment of cellulite; therapeutic facial masks; facial toning machines for cosmetic use; electric stimulation and magnetic stimulation apparatus for physical therapy purposes for the treatment of nerve and muscle pain and elimination of muscular spasms; gynecological and urological apparatus and instruments, namely for genital rejuvenation, treatment sexual dysfunction, gynecological treatment and pelvic floor treatment.<br><br>Class 44: Medical services; medical equipment rental; cosmetic and plastic surgery; beauty salons; liposuction services; medical removal of body cellulite. |
| 5,572,801 | **EMSCULPT** | Oct. 2, 2018 | Sept. 29, 2017 | Class 10: Medical apparatus and instruments for the treatment of cellulite; medical apparatus and instruments for body toning and body shaping; medical apparatus and instruments for the removal of fat, circumference reduction, tightening of skin, reduction of wrinkles, reduction of scars, reduction of stretch marks, rejuvenation of skin, and treatment of pigmentation spots; above medical apparatuses with exception for |

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | the treatment of the nasopharynxs including inhalers and nasal irrigators; massage apparatus; medical apparatus and instruments for aesthetic skin treatment procedures; medical apparatus generating electromagnetic, magnetic, electrical, mechanical or thermal energy for use in skin treatment procedures; medical apparatus particularly apparatus for pain management, elimination of muscle spasms; gynaecological and urological apparatus and instruments, namely, for genital rejuvenation, treatment sexual dysfunction, gynecological treatment and pelvic floor treatment |
| 6,069,279 | **EMSCULPT** | June 2, 2020 | Sept. 29, 2017 | Class 44: medical services; gynecology services; medical equipment rental; cosmetic and plastic surgery; beauty salons; liposuction services; removal of body cellulite |

36.     BTL has continuously and exclusively used the BTL Trademarks and has never abandoned them. The BTL Trademarks are validly registered in the United States and are in full force and effect. True and correct "status" copies of the BTL Trademark registrations, obtained from the Trademark Status Document Retrieval ("*TSDR*") database of the United States Patent and Trademark Office, are attached to this Complaint as **Composite Exhibit E**. These registrations constitute *prima facie* evidence of validity of the BTL Trademarks and of BTL's exclusive right to use the BTL Trademarks under 15 U.S.C. § 1057(b).

37.     The BTL Trademarks therefore perform an important source-identifying function for BTL's aesthetic body-contouring devices like the EMSCULPT® and associated treatment services. The BTL Trademarks signify to purchasers that the body-contouring devices come from BTL, and the body-contouring services are rendered by BTL's devices and administered by BTL-trained and BTL-authorized service providers. The BTL Trademarks are inherently distinctive and are associated with BTL's innovative aesthetic body-contouring devices that have acquired considerable brand loyalty through BTL's sales and promotion, and direct word-of-mouth promotion by consumers. In addition, BTL has expended significant time, money, and resources in developing, marketing, advertising, promotion, and selling its products and services under its trademarks, including the BTL Trademarks, in the United States. The market reputation and consumer goodwill associated with the BTL Trademarks are of significant value to BTL.

### C.     Defendants' Unlawful Conduct

38.     On information and belief, Defendants recently began competing with BTL in the non-invasive body-contouring industry by manufacturing and selling non-invasive body-contouring devices, which utilize electromagnetic waves to generate muscle contractions. Specifically, Defendants market and sell the NMS Body device and NMS Face device (collectively, the "***Accused Devices***"). *See* https://www.dnadistribution.us/nms and https://www.dnadistribution.us/nmsface.

39.     On information and belief, the NMS Body device implements the same or substantially the same technology as the '634 Patent.

40.     On information and belief, the NMS Face device implements the same or substantially the same technology as the '255 Patent.

41.     On information and belief, the Accused Devices include or perform each and every limitation of at least one claim of the Asserted Patents, either literally or under the doctrine of

equivalents. By making, offering to sell, selling, and/or importing into the United States the Accused Devices, Defendants have directly infringed, and continue to directly infringe, literally or under the doctrine of equivalents, one or more claims of the Asserted Patents under 35 U.S.C. § 271(a).

42.     On information and belief, Defendants actively encourage, promote, distribute, provide instruction for, and support the use of the Accused Devices by their customers in a manner that directly infringes, either literally or under the doctrine of equivalents, one or more claims of the Asserted Patents under 35 U.S.C. § 271(b), knowing and intending that Defendants' customers will commit acts in such a manner as to directly infringe the First Asserted Patents or the Second Asserted Patent.

43.     On information and belief, Defendants have been aware of the Asserted Patents since at least September 27, 2024, when BTL informed Defendants via email of their infringement of BTL's intellectual property. BTL's "Patent Labeling" webpage also lists the Asserted Patents and identifies them as covering the EMSCULPT® and EMFACE® devices.

44.     Defendants have used and continue to use the BTL Trademarks, and confusingly similar variations of the BTL Trademarks, in its informational and promotional materials for the Accused Devices. Defendants' webpage for the NMS Body device, for example, includes a link to "Read Clinical Studies on NMS® Body" that redirects to a Google Drive titled "NMS® Clinical Studies" containing seven (7) pieces of literature discussing clinical trials performed and relevant to the NMS Body device. *See* **Exhibits F–L**.

45.     Specifically, Defendants' use of BTL's federally registered HIFEM® mark in **Exhibit G** to refer to the treatment protocols the NMS Body employs. Defendants also use the confusingly similar HIEMS mark to refer to, on information and belief, the same treatment

protocols in **Exhibit H**. Defendant also use BTL's federally registered EMSCULPT® mark to advertise and promote its NMS Body device. *See* https://www.instagram.com/p/C3lx8l5LrVY/.



(Accessed December 19, 2024)

46.    On information and belief, Mr. Perlov and Ms. Varshavski are the moving, conscious, and active forces behind DNA's infringing conduct. For example, on information and belief, Mr. Perlov and Ms. Varshavski are the owners of DNA. Further, on information and belief, Mr. Perlov and Ms. Varshavski are the sole authorized members of DNA. DNA's Articles of Organization, for instance, represent that Mr. Perlov and Ms. Varshavski are the sole "AMBR[s]." **Composite Exhibit M** (DNA Incorporation Documents).

47.    On information and belief, Mr. Perlov has also maintained and continues to maintain his personal residence as the base of operations for DNA's infringing activities. According to DNA's corporate filings, Mr. Perlov resides at 6000 Collins Avenue, Apartment 340, Miami Beach, Florida 33140, which, on information and belief, is a private residential address.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

*See id*. DNA's corporate filings represent that DNA's address is the same as Mr. Perlov's private residential address in Miami Beach, Florida. *See id*. Thus, on information and belief, Mr. Perlov's personal residence has and continues to serve as the location where Defendants receive the Accused Devices from wholesalers, warehouse those devices, and ship those devices to purchasing customers. On information and belief, Mr. Perlov's personal residence also has and continues to serve as, (1) the location where Defendants receive, process, and execute purchase orders for the Accused Devices submitted by customers and (2) the location where Defendants receive, process, and respond to customer inquiries, complaints, and requests regarding the Accused Devices. By permitting his personal address to serve as the base of operations for Defendants' sales of the Accused Devices and its customer service-related activities, Mr. Perlov has and continues to actively facilitate Defendants' infringing conduct.

48.     Mr. Perlov and Ms. Varshavski, as the sole authorized members of DNA, are and have been the individuals possessing decision-making authority to enter into wholesale purchase agreements on behalf of DNA. Thus, on information and belief, Mr. Perlov and Ms. Varshavski have and continue to, on DNA's behalf, enter into wholesale purchase agreements with third parties for the importation of the Accused Devices into the United States.

49.     Mr. Perlov and Ms. Varshavski, as the sole authorized members of DNA, are and have been the individuals possessing sole decision-making authority over the content of DNA's technical, information, and promotional materials for the Accused Devices.

50.     On information and belief, Mr. Perlov and Ms. Varshavski have and continue to willfully and maliciously serve as the moving, conscious, and active forces behind DNA's infringing conduct—not least because Mr. Perlov and Ms. Varshavski have had constructive

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

knowledge of BTL's at least since September 27, 2024, when counsel for BTL informed Defendants via email of their potential infringement of BTL's intellectual property.

51.     The images below are representative of the Accused Devices:



NMS Face device



NMS Body device

52.     On information and belief, Defendants' activities are ongoing despite attorneys for

BTL informing Defendants that their activities violate BTL's rights. On September 27, 2024,

attorneys for BTL successfully sent via email and FedEx a demand letter to DNA at DNA's listed

email address (info@dnadistribution.us) and principal place of business, Mr. Perlov at his

residence, and DNA's registered agent Khadijeh Hemmati of ZenBusiness Inc., *see* **Exhibit M**, at

its principal place of business. Defendants responded via email from info@dnadistribution.us on

October 4, 2024, requesting additional time for investigation. Attorneys for BTL followed up via

email on October 21, 2024, following no response from Defendants. Defendants responded via

email on October 28, 2024. Attorneys for BTL responded via email on October 30, 2024. On

November 19, 2024, attorneys for BTL received an email from counsel indicating they had been

retained by Defendants. On November 26, 2024, attorneys for BTL received via email a letter from Defendants' counsel. *See* **Composite Exhibit N** (Communications).

### COUNT I: INFRINGEMENT OF U.S. PATENT NO. 10,478,634

53. BTL repeats and re-alleges paragraphs 1–52 as if fully set forth herein.

54. The '634 Patent is directed towards a method for toning muscles in a patient using time-varying magnetic fields. Exemplary Claim 1 of the '634 Patent recites:

A method for toning muscles in a patient using time-varying magnetic fields, the method comprising:

placing a first applicator comprising a magnetic field generating coil in contact with a patient's skin or clothing at a body region of the patient, wherein the body region is an abdomen or a buttock;

coupling the first applicator to the patient with an adjustable flexible belt so that the belt holds the first applicator to the patient's skin or clothing;

providing energy to the magnetic field generating coil in order to generate a time-varying magnetic field; and

applying a magnetic fluence of 50 T $cm^2$ to 1,500 T $cm^2$ to the body region,

wherein the time-varying magnetic field is applied to the body region with a magnetic flux density sufficient to cause a muscle contraction in the body region.

55. Defendants have induced infringement and continue to induce direct infringement, literally or under the doctrine of equivalents, of at least claim 1 of the '634 Patent by making, using, offering to sell, selling, or importing the NMS Body device in the United States and by encouraging, promoting, and instructing customers to use at least these devices in a manner that directly infringes at least claim 1 the '634 Patent.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

56.     Defendants have and continue to encourage, promote, and instruct customers to perform the preamble of claim 1 of the '634 Patent, which recites "[a] method for toning muscles in a patient using time-varying magnetic fields." The landing page for the NMS Body device (https://www.dnadistribution.us/nms) encourages, promotes, or instructs customers to use the devices in a manner that tones a patient's muscles using time-varying magnetic fields.

> # Electromagnetic & Neuromuscular Stimulation Synergy

> Promote muscle growth

> **The Uniqueness of NMS®**
> NMS technology stands alone in its capacity to **effectively target and reduce fat layers** — both under the skin and around the organs — while simultaneously enhancing muscle tone. This dual-action process is unique to NMS® and is not found in any other available fitness technology.

> **Fat Reduction & Muscle Toning**
> Fat Reduction & Muscle Toning with NMS®

> **Muscle Toning**
> Muscle Toning with NMS®

> **Muscle Toning**
> Muscle Toning with NMS® for booty

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343



https://www.instagram.com/p/C_yNLrMiW48/

57.      In a video available on the NMS Body device's landing page, it states that the NMS Body device's procedure includes two phases, "Phase 1. Electromagnetic Emission (Vibration of muscle fibers)" and "Phase 2. Neuromuscular Emission (Contraction of muscle fibers)." The video also states that the NMS Body device offers "PRE-SET[] PROGRAMS: HYPE[R]TROPHY [sic], DEFINITION, CELLULITE, RECOVERY." On information and belief, these different treatment offerings contain different treatment levels with different stages of frequency application of the magnetic fields over the course of treatment.

58.      Defendants have and continue to encourage, promote, and instruct customers to perform the claimed step of "placing a first applicator comprising a magnetic field generating coil in contact with a patient's skin or clothing at a body region of the patient, wherein the body region is an abdomen or a buttock."  On information and belief, the NMS Body device includes at least one applicator comprising a magnetic field generating coil. Defendants encourage and instruct users to place these applicators on the skin of a patient's abdomen or buttocks or over clothing covering these body regions. The landing page for the NMS Body device and Instagram posts

featuring the NMS Body device depict or describe the applicators on various body regions including the abdomen or buttock.



https://www.instagram.com/dna_distribution/p/C_yNLrMiW48/



https://www.instagram.com/dna_distribution/reel/DA4DQFTvpon/

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343



simultaneously stimulate multiple
muscle groups, including the legs,
glutes, core, upper body, and more,

59.     Defendants have and continue to encourage, promote, and instruct customers to perform the claimed step of "coupling the first applicator to the patient with an adjustable flexible belt so that the belt holds the first applicator to the patient's skin or clothing." The landing page for the NMS Body device and Instagram posts featuring the NMS Body device represent that the device comes with an adjustable flexible belt that fastens the applicators to a patient's body region.



**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2ⁿᵈ Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343



https://www.instagram.com/dna_distribution/reel/DA4DQFTvpon/

60.     Defendants have and continue to encourage, promote, and instruct customers to perform the claimed step of "providing energy to the magnetic field generating coil in order to generate a time-varying magnetic field." On information and belief, a reasonable opportunity for further investigation and discovery will show that the method of operation of the NMS Body device includes providing a power supply which transmits energy to the applicators, via an energy source and energy storage device, which in turn generates time-varying magnetic fields. On information and belief, the NMS Body device includes a power supply which transmit energy to the applicators, which in turn generate time-varying magnetic fields.

61.     Defendants have and continue to encourage, promote, and instruct customers to perform the claimed step of "applying a magnetic fluence of 50 T cm$^2$ to 1,500 T cm$^2$ to the body region." On information and belief, a reasonable opportunity for further investigation or discovery will show that the NMS Body device's magnetic field generating coils are configured to generate

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

a time-varying magnetic field with a magnetic flux density in a range of 0.1 Tesla to 7 Tesla on a surface of the magnetic field generating coils and are of an area sufficient to result in a magnetic fluence in the range of 50 T cm$^2$ to 1,500 T cm$^2$.

62.     Defendants have and continue to encourage, promote, and instruct customers to perform the claimed step "wherein the time-varying magnetic field is applied to the body region with a magnetic flux density sufficient to cause a muscle contraction in the body region." The landing page for and Instagram posts featuring the NMS Body device promote and advertise the device's ability to generate magnetic fields sufficient to cause muscle contractions in the targeted body region.

In just half an hour, NMS® can induce approximately 50,000 supramaximal contractions per muscle group, equivalent to undertaking 50,000 crunches or squats.

NMS® boasts the capability of generating up to 60,000 muscle contractions, penetrating deeply up to 20 cm into the muscle tissue. It's unrivaled in its ability to simultaneously stimulate multiple muscle groups, including the legs, glutes, core, upper body, and more, making it a versatile and comprehensive fitness solution.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

Neuro-Muscular Stimulation (NMS)® is a cutting-edge approach to fitness that replicates the brain's natural process of muscle contraction through advanced electrical signals. These signals are designed to be much more potent than the body's standard impulses, allowing NMS® to achieve what's known as supramaximal contractions — these are contractions so intense that they go beyond what one can typically achieve through regular training.

63.     Defendants have induced infringement and continue to induce direct infringement, literally or under the doctrine of equivalents, of at least claim 1 of the '634 Patent by making, using, offering to sell, selling, or importing at least the NMS Body device in the United States and by encouraging customers to use at least the NMS Body device in a manner that directly infringes at least claim 1 of the '634 Patent. On information and belief, Defendants were aware of the '634 Patent since before the filing of this Complaint. On information and belief, Defendants have known that the NMS Body device is designed for a use that infringes one or more claims of the '634 Patent, and the NMS Body device lacks a substantial non-infringing use. On information and belief, Defendants have, and will continue to, intentionally encourage acts of direct infringement with knowledge of the '634 Patent and knowledge that their acts are encouraging infringement.

64.     Defendants' indirect infringement of the '634 Patent has been, and continues to be, willful. On information and belief, Defendants have been aware of the '634 Patent before the filing of this Complaint and have infringed the '634 Patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271.

65.     Defendants' indirect infringement of the '634 Patent has damaged, and continues to damage, BTL in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that BTL would have made but for Defendants' infringing acts as provided by 35 U.S.C. § 284.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

66.     BTL will suffer irreparable harm unless Defendants are enjoined from infringing the '634 Patent.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 11,679,255

67.     BTL repeats and re-alleges paragraphs 1–52 as if fully set forth herein.

68.     The '255 Patent is directed towards a device for treating a patient using radiofrequency energy and pulsed electric current. Exemplary claim 16 of the '255 Patent recites:

A device for treating a patient by radiofrequency energy and a pulsed electric current, the device comprising:

a flexible pad configured to be attached to a body part of a patient, the flexible pad comprising:

a flexible substrate comprising an underside configured to face the body part during a treatment;

an electrode coupled to the underside of the flexible substrate; and

an adhesive coupled to the underside of the flexible substrate and to the electrode,

wherein the electrode is configured to be in contact with the body part via the adhesive;

wherein the electrode is configured to apply radiofrequency energy to the body part to cause heating of the body part, and

wherein the electrode is configured to apply pulsed electric current to the body part to cause a muscle contraction of a muscle within the body part; and

a control unit configured to control the radiofrequency energy and the pulsed electric current to provide the heating and the muscle contraction of the body part during the treatment,

wherein the body part comprises one of a face, a neck, or a submentum.

69.     The NMS Face device includes or performs each and every limitation of at least claim 16 of the '255 Patent, either literally or under the doctrine of equivalents.

70.     Defendants have and continue to directly infringe, literally or under the doctrine of equivalents, at least claim 16 of the '255 Patent by making, using, offering to sell, selling, or importing the NMS Face device in the United States.

71.     Defendants have induced infringement and continue to induce direct infringement, literally or under the doctrine of equivalents, of at least claim 16 of the '255 Patent, by encouraging, promoting, and instructing customers to use the NMS Face device in a manner that directly infringes at least claim 16 of the '255 Patent.

72.     On information and belief, the NMS Face device includes the preamble of claim 16 of the '255 Patent, which recites "[a] device for treating a patient by radiofrequency energy and a pulsed electric current." The landing pages for the NMS Face device represents that the device treats patients by radiofrequency energy and pulsed electric current. *See, e.g.,* https://www.dnadistribution.us/nmsface ("NMS Face operates on a dual-technology platform that rejuvenates the facial area comprehensively. The Neuro-Muscular Stimulation (NMS) targets the facial muscles with precise electrical pulses, enhancing their strength and structure, which supports the overlying skin for a toned and lifted appearance. Simultaneously, the deep Radiofrequency heats the skin's deeper layers to a specific temperature, stimulating the natural production of collagen and elastin").

73.     On information and belief, the NMS Face device includes the claimed element "a flexible pad configured to be attached to a body part of a patient." On information and belief, the following     screenshot     taken     from     DNA's     Instagram     Account

(https://www.instagram.com/dna_distribution?utm_source=ig_web_button_share_sheet)   shows

the NMS Face device's pads flexing to the contours of the patient's face.



(https://www.instagram.com/p/DB9RtQMRzD4/; accessed December 5, 2024)

On information and belief, the video posted on DNA's Instagram account

(https://www.instagram.com/p/C_i-JzqP_W1/) shows an individual adhering one of the NMS

Face device's flexible pads to a patient's face.

74.     On information and belief, the NMS Face device includes the claimed element "a

flexible substrate comprising an underside configured to face the body part during a treatment."

On information and belief, as shown in the screenshot in paragraph 73, the NMS Face device's

pads are flexing to the contours of the patient's face and include an underside facing the patient's

face.

75.     On information and belief, the NMS Face device includes the claimed element "an

electrode coupled to the underside of the flexible substrate." As stated in paragraphs 72 and 74, on

information and belief, the NMS Face device uses pulsed electric current and flexible substrates.[1] On information and belief, these pulsed electric current require an electrode to be produced.

76.     On information and belief, the NMS Face device includes the claimed element "an adhesive coupled to the underside of the flexible substrate and to the electrode." On information and belief, as shown in the screenshot in paragraph 73, the flexible pads are adhered to the patient's face with, on information and belief, an adhesive.[2] On information and belief, for the same reasons stated in paragraph 75, the NMS Face device includes electrodes. On information and belief, for the reasons stated in paragraph 73, the NMS Face device includes an adhesive coupled to the underside of the flexible substrate.

77.     On information and belief, the NMS Face device includes the claimed element "wherein the electrode is configured to be in contact with the body part via the adhesive." On information and belief, the NMS Face device uses pulsed electric current for the reasons stated in paragraph 72, and further on information and belief, that pulsed electric current emanates from electrodes included in the flexible pads. On information and belief, the electrode is located on the underside of the flexible substrate for the reasons stated in paragraph 75. On information and belief, the electrode is in contact with the patient's body in order to operate.

78.     On information and belief, the NMS Face device includes the claimed element "wherein the electrode is configured to apply radiofrequency energy to the body part to cause heating of the body part." On information and belief, for the same reasons stated in paragraph 72,

---

[1] On information and belief, a reasonable opportunity for further investigation and discovery will show that the NMS Face device includes an electrode coupled to the underside of the flexible substrate.

[2] On information and belief, a reasonable opportunity for further investigation and discovery will show that the NMS Face device includes an adhesive coupled to the underside of the flexible substrate and to the electrode.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

the NMS Face device treats patients using radiofrequency energy. And, on information and belief, for the same reasons stated in paragraph 75, the NMS Face device includes electrodes.

79.     On information and belief, the NMS Face device includes the claimed element "wherein the electrode is configured to apply pulsed electric current to the body part to cause a muscle contraction of a muscle within the body part." On information and belief, for the same reasons stated in paragraph 72, the NMS Face device treats patients using pulsed electric current. On information and belief, these pulsed electric currents produced by the NMS Face device cause muscle contractions. For example, videos posted on DNA's Instagram Page (https://www.instagram.com/dna_distribution?utm_source=ig_web_button_share_sheet) show patients' facial muscles contracting upon being subjected to the pulsed electric currents of the NMS Face device. *See, e.g.,* https://www.instagram.com/stories/highlights/18008137679571377/.

80.     On information and belief, the NMS Face device includes the claimed element "a control unit configured to control the radiofrequency energy and the pulsed electric current to provide the heating and the muscle contraction of the body part during the treatment." In a video posted on DNA's Instagram Page (https://www.instagram.com/p/DB9RtQMRzD4/) an operator is shown interacting with the NMS Face device's control unit. That same video represents that the operator can select and modify the NMS Face device's radiofrequency energy and pulsed electric current.

81.     On information and belief, the NMS Face device includes the claimed element "wherein the body part comprises one of a face, a neck, or a submentum." On information and belief, the NMS Face device is intended to treat various areas of a patient's face, neck, and submentum. For example, the below screenshot taken from DNA's website shows the NMS Face device's flexible pads attached to a patient's face and submentum.



(https://www.dnadistribution.us/nmsface; accessed December 6, 2024)

82.     Defendants' direct infringement of the '255 Patent has been and continues to be willful. Defendants have been aware of the '255 Patent since before the filing of this Complaint and have infringed the '255 Patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271.

83.     Defendants' infringement of the '255 Patent has damaged, and continues to damage, BTL in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that BTL would have made but for Defendants' infringing acts as provided by 35 U.S.C. § 284.

84.     BTL will suffer irreparable harm unless Defendants are enjoined from infringing the '255 Patent.

### COUNT III: TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114

85.     BTL repeats and realleges paragraphs 1–52 as if fully set forth herein.

86.     BTL owns exclusive rights to the BTL Trademarks in the United States. The United States trademark registrations for the BTL Trademarks are in full force and effect.

32

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

87.     Defendants, without BTL's permission or consent, have used and continue to use the BTL Trademarks in connection with the advertising, promotion, sale, and offer for sale of the Accused Devices.

88.     On information and belief, Defendants' unauthorized use of the HIFEM® trademark to advertise and promote at least the NMS Body device, *see supra* ¶ 45, has caused and is likely to cause confusion, mistake, and deception among the public as to the origin and quality of this device; its affiliation, connection, or association with BTL; and the sponsorship or approval by BTL of this device.

89.     On information and belief, Defendants' unauthorized use of the HIEMS mark— which is a confusingly similar variation of BTL's HIFEM® mark—to advertise and promote at least the NMS Body device, *see supra* ¶ 45, has caused and is likely to cause confusion, mistake, and deception among the public as to the origin and quality of the device; its affiliation, connection, or association with BTL; and the sponsorship or approval by BTL of this device.

90.     On information and belief, Defendants' unauthorized use of the EMSCULPT® trademark to advertise and promote at least the NMS Body device, *see supra* ¶ 45, has caused and is likely to cause confusion, mistake, and deception among the public as to the origin and quality of this device; its affiliation, connection, or association with BTL; and the sponsorship or approval by BTL of this device.

91.     Defendants have had knowledge of BTL's rights in the BTL Trademarks since before the filing of this Complaint. Under 15 U.S.C. § 1072, Defendants have had constructive knowledge of the BTL's rights in each of the EMSCULPT® trademarks since at least the dates the registration for each of these trademarks first issued to BTL. *See supra* ¶ 35. Under 15 U.S.C. § 1072, Defendants have had constructive knowledge of BTL's rights in the HIFEM® trademark

since at least March 5, 2019—the date the registration for the HIFEM® trademark first issued to BTL. Moreover, a straightforward Google search for "BTL" and "trademarks" lists the BTL Trademarks as associated with BTL. https://www.trademarkia.com/company-btl-industries-inc-3618568-page-2-2.

92.     The knowing and intentional nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

93.     Defendants' trademark infringement has damaged, and continues to damage, BTL in an amount yet to be determined, but of at least the profits that Defendants have made as a result of its infringement, plus the cost of this action. Defendants' trademark infringement is the direct and proximate cause of BTL's damages.

94.     BTL is entitled to an injunction restraining Defendants, their officers, agents, and employees, and all persons acting in concert with Defendants, from engaging in any further such acts in violation of federal trademark law.

### COUNT IV: FEDERAL UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN, AND FALSE ADVERTISING UNDER 15 U.S.C. § 1125

95.     BTL repeats and re-alleges paragraphs 1–52 as if fully set forth herein.

96.     Defendants' unauthorized, intentional, and willful use of the BTL Trademarks to promote, market, offer for sale, and sell the Accused Devices has and is likely to confuse, mislead, or deceive as to the origin and quality of these devices, their association with BTL and BTL's EMSCULPT® and EMFACE® devices, and the sponsorship or approval by BTL of these devices.

97.     Defendants' unauthorized, intentional, and willful use of the BTL Trademarks to promote, market, offer for sale, and sell the Accused Devices misrepresents the nature, characteristics, qualities, and geographic origin of these devices.

98.     Defendants' actions constitute a willful violation of 15 U.S.C. § 1125.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

99.     Defendants' actions described above have injured and, if permitted to continue, will continue to harm BTL's business and the goodwill associated with its brand, as well as BTL's reputation for providing high-quality and safe body-contouring aesthetic devices and procedures subject to strict quality control standards that have been cleared by the FDA.

100.     BTL has no adequate remedy at law, and if Defendants' actions are not enjoined, BTL will continue to suffer irreparable harm to its reputation and the goodwill of the BTL brand.

## COUNT V: VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT UNDER FLA. STAT. § 501.201 *ET SEQ.*

101.     BTL repeats and re-alleges paragraphs 1–52 as if fully set forth herein.

102.     The acts of Defendants complained of herein in Counts III–IV constitute deceptive and unfair trade practices in violation of FDUTPA, Fla. Stat. § 501.201 *et seq.*

103.     Defendants' unauthorized, intentional, and willful use of the BTL Trademarks to promote, market, offer for sale, and sell the Accused Devices constitutes deceptive and unfair trade practices in violation of FDUTPA, Fla. Stat. § 501.201 *et seq.*

104.     Defendants' unauthorized, intentional, and willful representations are false and misleading and were done to deceive the consuming public in Florida and to capitalize on the goodwill developed by BTL.

105.     Defendants' use of the BTL Trademarks in connection with the marketing and sale of the Accused Devices constitutes unfair competition that is likely to cause confusion, mistake, and deception among consumers as to the affiliation, connection, or association with BTL or the origin, sponsorship, or approval of the Accused Devices by BTL. Defendants' deceptive actions are likely to influence the consuming public's purchasing decisions. Defendants' unfair competition jeopardizes the goodwill created by BTL in its EMSCULPT® and HIFEM® trademarks.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

106.    Despite their actual and constructive knowledge of BTL's use and rights in the BTL Trademarks, Defendants have continued to use the BTL Trademarks (and variations thereof) in association with the promotion, advertising, marketing, and/or sale of the Accused Devices without BTL's authorization or consent. Defendants' actions are deliberate and willful and have been done with the intention of trading upon the valuable goodwill created by BTL in the BTL Trademarks.

107.    BTL has sustained injury, damage, and loss in Florida based on Defendants' actions. Defendants' actions directly or indirectly affected Florida.

108.    Defendants are liable for a violation of FDUTPA, Fla. Stat. § 501.201 *et seq.*

109.    Pursuant to §§ 501.2105 and 501.211, BTL is entitled to recover its actual damages, plus reasonable attorneys' fees and costs.

## COUNT VI: COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

110.    BTL repeats and re-alleges paragraphs 1–52 as if fully set forth herein.

111.    This claim arises under the common law of the State of Florida.

112.    Defendants have engaged in unfair competition through their reliance and exploitation of consumer mistake and confusion, and its deliberate efforts to exploit the goodwill represented by the BTL Trademarks in connection with the marketing and sale of the Accused Devices.

113.    Defendants' aforementioned acts constitute trademark infringement and unfair competition in violation of Florida common law.

114.    As a proximate result of Defendants' actions, BTL has suffered and will continue to suffer damages.

115.    BTL has no adequate remedy at law and will continue to suffer irreparable harm unless Defendants are enjoined.

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

116.     By reason of Defendants' unlawful conduct as alleged above, BTL has been substantially injured and is entitled to damages and Defendants' profits attributable to their infringement, which are presently indeterminate, and the costs of this action.

## COUNT VII: FEDERAL TRADEMARK COUNTERFEITING UNDER 15 U.S.C. § 1114

117.     BTL repeats and re-alleges paragraphs 1–52 as if fully set forth herein.

118.     Defendants use marks identical to BTL's HIFEM® and EMSCULPT® federally registered trademarks. *See supra* ¶ 45.

119.     BTL has not authorized Defendants' use of the BTL Trademarks to advertise and promote the Accused Devices.

120.     Defendants' unauthorized use of the BTL Trademarks is likely to (a) cause the public and consumers to believe that Defendants' Accused Devices are authorized by and/or affiliated with BTL; and (b) result in Defendants unfairly benefitting from the reputation of BTL and the BTL Trademarks to the substantial and irreparable injury of consumers, BTL, the BTL Trademarks, and the substantial goodwill represented thereby.

121.     Defendants' acts as set forth herein constitute trademark counterfeiting in violation of 15 U.S.C. § 1117(b)(1) and reflect Defendants' intent to exploit the goodwill and strong brand recognition associated with the BTL Trademarks.

## PRAYER FOR RELIEF

WHEREFORE BTL requests entry of judgment against Defendants as follows:

A.     A judgment that Defendants have infringed one or more claims of the Asserted Patents in violation of 35 U.S.C. § 271(a)-(c);

B.     An award of damages not less than $125,000 for infringement of the Asserted Patents, with said damages to be trebled because of the intentional and willful nature of Defendants' infringement, as provided by 35 U.S.C. § 284;

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

C.      A judgment that Defendants have willfully infringed one or more claims of the Asserted Patents;

D.      A determination that this case is "exceptional" under 35 U.S.C. § 285 and an award of BTL's reasonable attorneys' fees;

E.      An order permanently enjoining Defendants, their officers, directors, employees, agents, and all persons acting in concert with them, from infringing the Asserted Patents;

F.      A judgment that Defendants have violated the Lanham Act, 15 U.S.C. § 1114, by committing acts of trademark infringement;

G.      A judgment that Defendants' use of the "HIFEM" mark, as alleged in this Complaint, infringes BTL's HIFEM® trademark;

H.      A judgment that Defendants' use of the "HIEMS" mark, as alleged in this Complaint, infringes BTL's HIFEM® trademark;

I.      A judgment that Defendants' use of the "EMSCULPT" mark, as alleged in this Complaint, infringes BTL's EMSCULPT® trademark;

J.      A judgment that Defendants have violated the Lanham Act, 15 U.S.C. § 1125(a), by committing acts of federal unfair competition, false designation of origin, and false advertising;

K.      A judgment that Defendants have violated the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.*;

L.      A judgment that Defendants have violated Florida common law;

M.      An award of damages for Defendants' infringement of the BTL Trademarks, including Defendants' profits, any damages sustained by BTL, and the costs of the action as provided by 15 U.S.C. § 1117(a), with said damages to be trebled because of the intentional and willful nature of Defendants' infringement, as provided by 15 U.S.C. § 1117(b);

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

N. A judgment that this case is "exceptional" under 15 U.S.C. § 1117(a) and an award of reasonable attorneys' fees;

O. A judgment that Defendants' conduct in violating the BTL Trademarks is willful and malicious;

P. Alternatively, an award of statutory damages for Defendants' infringement of the BTL Trademarks in an amount of $200,000.00 per counterfeit mark. That amount to be heightened to $2,000,000.00 per counterfeit mark in accordance with 15 U.S.C. § 1117(c)(2) for Defendants' willfulness;

Q. An award of damages against Defendants as a result of their wrongful acts against BTL in an amount to be proved at trial;

R. An award of any and all of Defendants' profits arising from the foregoing acts;

S. An award of pre-and post-judgment interest of any monetary damages at the highest rate allowed by law;

T. Permanent injunctive relief enjoining Defendants from:

 i. using the BTL Trademarks or any reproductions, copies, or colorable imitations thereof, in any manner in connection with the promotion, marketing, advertising, offering for sale, or sale of any good or service that is not a good or service offered by a genuine BTL product, or is not authorized by BTL to be offered in connection with the BTL Trademarks;

 ii. passing off, inducing, or enabling others to sell or pass off any good or service as a good or service offered by a genuine BTL product, or any other good or service offered by BTL, that is not BTL's or not offered under the authorization, control, or supervision of BTL and approved by BTL for sale under the BTL

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343

Trademarks;

  iii. committing any acts calculated to cause consumers to believe that Defendants' goods or services are those sold under the authorization, control or supervision of BTL, or are sponsored by, approved by, or otherwise connected with BTL; and

  iv. further infringing the BTL Trademarks and damaging BTL's goodwill.

U. An award of BTL's costs and expenses in this action; and

V. For such other relief as the Court may deem just and proper.

## JURY DEMAND

BTL hereby demands a trial by jury on all issues so triable.

      **ASSOULINE & BERLOWE, P.A.**

    By: s/ Peter A. Koziol
      Peter A. Koziol (FBN 030446)
      pak@assoulineberlowe.com
      Miami Tower
      100 SE 2nd Street, Suite 3650
      Miami, FL 33131
      Telephone: (305) 567-5576
      Facsimile: (305) 567-9343

      **Attorneys for Plaintiff,**
      **BTL Industries, Inc.**

**ASSOULINE & BERLOWE, P.A.**
Miami Tower, 100 SE 2nd Street, Suite 3650, Miami, Florida 33133 • Telephone: 305-567-5576 • Facsimile: 305-567-9343